# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMES DAVID COX,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **TENNESSEE VALLEY** ) | |
| **AUTHORITY; DENNIS BOTTORFF,** ) | |
| **in his official capacity as Chairman of** ) | **CASE NO. 5:11-cv-02559-SLB** |
| **the TVA Board of Directors;** ) | |
| **MARILYN A. BROWN, MIKE** ) | |
| **DUNCAN, TOM GILLILAND,** ) | |
| **WILLIAM GRAVES, BARBARA S.** ) | |
| **HASKEW, RICHARD HOWORTH,** ) | |
| **NEIL MCBRIDE, and WILLIAM B.** ) | |
| **SANSOM in their official capacities as** ) | |
| **members of the TVA Board of** ) | |
| **Directors; and DAY &** ) | |
| **ZIMMERMANN NPS, Inc.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This case is currently before the court on defendant Tennessee Valley Authority's ("TVA") Motion to Dismiss, (doc. 13).[1] On July 13, 2011, plaintiff filed a one-count complaint, (doc. 1), against TVA and Day and Zimmermann NPS, Inc. ("DZNPS"), requesting relief pursuant to the Age Discrimination in Employment Act of 1967, 81 Stat. 602, *as amended*, 29 U.S.C. § 621 *et seq*. ("ADEA"). TVA argues that dismissal is

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

appropriate because TVA is an improper defendant to this action, and plaintiff has not

exhausted his federal-sector administrative remedies.  Upon consideration of the record, the

submissions of the parties, the arguments of counsel, and the relevant law, the court is of the

opinion that TVA's Motion to Dismiss, (doc. 13), is due to be granted.

## I.   STANDARD OF REVIEW

First, under Fed. R. Civ. P. 12(b)(6), a party may move the court to dismiss a case

based on a failure to state a claim upon which relief can be granted.  When deciding a motion

to dismiss under Rule 12(b)(6), the court "must accept the allegations set forth in the

complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993); *see also*

*Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

> The allegations in the complaint are taken as true and construed in the light
> most favorable to the plaintiffs. [*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222,
> 1225 (11th Cir. 2002).]  However, the complaint's "[f]actual allegations must
> be enough to raise a right to relief above the speculative level." *Bell Atlantic
> Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929
> (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.
> 2007).   "The Supreme Court's most recent formulation of the pleading
> specificity standard is that 'stating such a claim requires a complaint with
> enough factual matter (taken as true) to suggest' the required element." *Watts*,
> 495 F.3d at 1295 (quoting *Twombly*, 127 S. Ct. at 1965).  This rule does not
> "impose a probability requirement at the pleading stage." *Twombly*, 127 S. Ct.
> at 1965.  Instead, the standard "simply calls for enough fact to raise a
> reasonable expectation that discovery will reveal evidence" of the required
> element.  *Id.*  "It is sufficient if the complaint succeeds in 'identifying facts
> that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d
> at 1296 (quoting *Twombly*, 127 S. Ct. at 1965).

*Rivell*, 520 F.3d at 1309-10.

"[T]he threshold that a complaint must meet to survive a motion to dismiss is

'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 1338 (M.D. Ala. 2001)

(quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)).

However, taking the facts as true, a court may grant a motion to dismiss when, "on the basis

of a dispositive issue of law, no construction of the factual allegations will support the cause

of action." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174

(11th Cir. 1993) (citations omitted).  A court need not accept legal conclusions as true, but

only well-pleaded factual allegations are entitled to an assumption of truth. *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949-50 (2009) (citation omitted).  Accordingly, for the purposes of TVA's

Motion to Dismiss pursuant to Rule 12(b)(6) (*i.e.* TVA is an improper party defendant), the

court accepts the allegations set forth in the complaint as true.

Second, under Fed. R. Civ. P. 12(b)(1), a party may move the court to dismiss a case

if the court lacks jurisdiction over its subject matter.  TVA construes its contention that

plaintiff failed to exhaust his federal-sector administrative remedies as an attack on the

court's subject matter jurisdiction. (Doc. 13 at 1.)  However, "th[e] failure to exhaust

administrative remedies by federal employees does not require dismissal for lack of subject

matter jurisdiction but is, instead, grounds for dismissal based on failure to state a claim."

*Jackson v. Barnhart*, No. 1:05-CV-2979-WSD, 2006 WL 2466810, at *4 (N.D. Ga. Aug. 24,

2006) (citing *Bryant v. U.S. Dep't of Agric.*, 967 F.2d 501, 504 (11th Cir. 1992)).  It is "a

requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable

tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  Moreover, and

explained *infra*, federal-sector ADEA claimants are not required to exhaust their administrative remedies before instituting a civil action, provided that they give the Equal Employment Opportunity Commission ("EEOC") a "notice of intent to file such action" within 180 days of the alleged discriminatory act and wait 30 days before filing suit. 29 U.S.C. § 633a(d).  "It is [also] well established . . . that the notice of intent to sue requirement is not an absolute jurisdictional requirement, but is subject to modification or excuse for equitable reasons." *Ray v. Nimmo*, 704 F.2d 1480, 1483 (11th Cir. 1983) (citations omitted). Therefore, the court considers the Motion to Dismiss, (doc. 13), and applies a Rule 12(b)(6) standard of review in deciding whether plaintiff complied with the applicable statutory prerequisites.

## II.  STATEMENT OF FACTS [2]

Plaintiff James David Cox ("plaintiff"), a 63-year-old male, began working for TVA in late 1969 or early 1970 as a laborer at the Browns Ferry Nuclear Plant ("Browns Ferry" or "the plant"). (Doc. 23 ¶ 10.)  Plaintiff retired in December 2004 but continued to work periodically at Browns Ferry under various TVA subcontractors following his retirement. (*Id*. ¶ 11.)  In early June 2010, TVA's Projects and Modifications Manager offered plaintiff

---

[2]The facts are taken from the First Amended Complaint, (doc. 23).  While the Motion to Dismiss, (doc. 13), addresses the allegations contained in the original complaint, (doc. 1), the court granted plaintiff leave to amend the complaint on November 9, 2011, (doc. 22).  Because there are no facts in the First Amended Complaint which change the court's analysis, the court will consider the Motion to Dismiss as addressing the allegations in the First Amended Complaint.

the opportunity to return to work as a supervisor over roofing contractors at Browns Ferry. (*Id.* ¶ 13.) Plaintiff accepted the offer and received a telephone call from DZNPS's Vice President of Staffing and Recruiting asking him to report on June 11, 2010. (*Id.*) Plaintiff alleges that because "TVA controlled the personnel decisions of [DZNPS] from what was an essentially centralized personnel function," TVA and DZNPS "constitute joint employers for [the] purposes of this action."[3] (*Id.* ¶ 14.)

Plaintiff supervised roofing contractors for approximately six weeks before his reassignment to the plant's 95-02 Fire Protection Project. (*Id.* ¶ 15.) About this time, in July 2010, plaintiff had a conversation with DZNPS Site Manager John Melvin ("Melvin"), wherein plaintiff told Melvin that he retired from TVA in 2004 and had performed contracting work at the plant ever since. (*Id.* ¶ 16.) Melvin replied that "the old station personnel" were "the problem people" for DZNPS and himself. (*Id.*) To plaintiff's knowledge, Melvin was approximately 38 years old at the time of this conversation. (*Id.*)

On or about September 24, 2010, Melvin terminated plaintiff and "replaced him with younger, less qualified employees, including Josh Normand, who, upon information and belief, was only in his 40s, and Jason Hovater, who, upon information and belief, was only in his 30s." (*Id.* ¶ 19.) Plaintiff filed a Charge of Discrimination with the EEOC on or about February 18, 2011, charging TVA and DZNPS with age discrimination. (*Id.* ¶ 9(a); *see* doc.

---

[3]TVA does not contest its status as a "joint employer" for the purposes of this motion.

23-1.)   On June 21, 2011, the EEOC issued a Dismissal and Notice of Rights letter, apprising plaintiff of his right to pursue his claim in district court. (Doc. 23 ¶ 9(b); *see* doc. 23-2.)  On July 13, 2011, plaintiff filed a one-count complaint against TVA and DZNPS requesting relief pursuant to the ADEA. (*See* doc. 1.)  This motion to dismiss followed. (Doc. 13.)

### III.   DISCUSSION

TVA moves for dismissal of this action on the grounds that: (1) "the nine-member Board of Directors of TVA, in their official capacity as the head of the agency, are the only proper defendants to this action . . . ," and (2) plaintiff failed to exhaust his federal-sector administrative remedies. (Doc. 13 at 1.)

Plaintiff filed an opposed motion for leave to amend his original complaint, (doc. 18), following TVA's Motion to Dismiss, (doc. 13), in order to add TVA's nine-member Board of Directors ("Board of Directors") as defendants.  The proposed amended complaint also sought to add a more detailed narrative of facts. (*See* doc. 18-1.)  TVA opposed the motion on the ground that the addition of the Board of Directors as defendants was futile because the proposed amended complaint could not overcome the obstacle that plaintiff failed to exhaust his federal-sector administrative remedies. (*See* doc. 20.)  The court nonetheless granted plaintiff's motion for leave without considering TVA's opposition due to the proposed amended complaint's additional factual allegations and plaintiff's impending deadline for serving the Board of Directors. (*See* doc. 22.)  Thus, even assuming that TVA

6

is an improper party, plaintiff may still maintain suit against the Board of Directors in their official capacities assuming they are the proper defendants to this action.  However, assuming that the Board of Directors are proper defendants to this action, TVA's contention that plaintiff failed to comply with the applicable statutory prerequisites to suit serves as a viable ground for dismissing both TVA and its Board of Directors from this action.

### 1.    *Proper Defendants*

Section 717 of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-16, is "the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. GSA*, 425 U.S. 820, 835 (1976).  Title VII provides that in an action against a federal agency, "the head of the . . . agency . . . ***shall be*** the defendant."  42 U.S.C. § 2000e-16(c) (emphasis added).  29 U.S.C. § 633a, the statute governing federal workplace age discrimination, does not provide similar instructions as to who constitutes the appropriate defendant(s) in age discrimination cases against federal employers.  However, the procedural provisions of section 633a were patterned "directly after," and are to be construed in accordance with, 42 U.S.C. § 2000e-16, the amendments to Title VII extending that statute's protection to federal employees. *See, e.g., Gomez-Perez v. Potter*, 553 U.S. 474, 487 (U.S. 2008) (citing *Lehman v. Nakshian*, 453 U.S. 156, 167 n.15 (1981), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991)); *Edwards v. Shalala*, 64 F.3d 601, 606 (11th Cir. 1995); *Lavery v. Marsh*, 918 F.2d 1022, 1025 (1st Cir. 1990); *Honeycutt v. Long,* 861 F.2d 1346, 1348-49 (5th Cir.

7

1988).  Thus, courts generally hold that "[t]he only proper defendant in a federal employee's ADEA action is the head of the federal agency that employed the plaintiff."  AGE DISCRIMINATION IN EMPLOYMENT LAW § 32 I.D.2., at 740 (2003) (citing *Quraishi v. Shalala*, 962 F. Supp. 55, 58 (D. Md. 1997); *Gregor v. Derwinski*, 911 F. Supp. 643, 654 (W.D.N.Y. 1996); *Meyer v. Runyon*, 869 F. Supp. 70, 76 (D. Mass. 1994)); *See also Honeycutt*, 861 F.2d at 1348-49; *Romain v. Shear*, 799 F.2d 1416, 1418 (9th Cir. 1986), *cert. denied*, 481 U.S. 1050 (1987); *Ellis v. U.S. Postal Serv.*, 784 F.2d 835, 838 (7th Cir. 1986) ("It is well-settled in this circuit that, in a Title VII action alleging discrimination in the Postal Service, the only proper defendant is the head of the agency . . . . The only novel question presented by this case, then, is whether the same rule should apply to actions under the ADEA. We hold that it should.").

Moreover, as explained *infra*, plaintiff argues, though in not certain terms, that his ADEA complaint is properly before this court pursuant to 29 U.S.C. § 633a(d).  Section 633a(d)'s accompanying EEOC regulation states, in pertinent part, that: "[a]s an alternative to filing a complaint under this part, an aggrieved individual may file a civil action in a United States district court under the ADEA ***against the head of an alleged discriminating agency*** . . . ." 29 C.F.R. § 1614.201(a) (emphasis added).  The nine-member Board of Directors act as the "head" of TVA. *See* 16 U.S.C. §§ 831a(a), (g).  Accordingly, the court is of the opinion that the individual members of the Board of Directors in their official capacities are the proper defendants in the case at bar and, therefore, TVA is due to be

dismissed from this action.

### 2.    *Prerequisites to Suit*

TVA also moves for dismissal of plaintiff's ADEA complaint because: (1) he failed "to exhaust his administrative remedies by timely contacting an Equal Opportunity (EO) counselor and filing a formal administrative complaint," or in the alternative, (2) he failed to "fil[e] a notice of intent to file a civil action with the EEOC." (Doc. 15 at 3.)

TVA is an executive agency within the parameters of 29 U.S.C. § 633a(a).  As such, a TVA employee may impose ADEA liability only in accordance with section 633a. *See* 29 U.S.C. § 633a(f).

The ADEA provides federal-sector employees with two alternative avenues of relief for acts of age discrimination.  On one hand, "[a]n individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5-6 (1991) (citing 29 U.S.C. §§ 633a(b), (c)).  Alternatively, a federal ADEA complainant may bypass the administrative process altogether and present his complaint directly in federal court if certain preconditions are satisfied. *See id.* at 6 (citing 29 U.S.C. § 633a(d)).

If a federal ADEA complainant chooses to invoke the EEOC's administrative remedial process (the first avenue), "[he] must [first] initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

"Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust administrative remedies." *Varnado v. Mukasey*, No. 08-61331-CIV, 2010 WL 2196263, at *2 (S.D. Fla. June 1, 2010) (quoting *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008) (per curiam)) (internal quotations omitted). Plaintiff has not alleged that he ever contacted an EO counselor regarding his allegedly discriminatory termination. (*See* doc. 23 ¶¶ 9(a)-(c).)  Thus, plaintiff's complaint cannot proceed in federal court against TVA or its Board of Directors absent his compliance with the second avenue for pursuing ADEA relief, the "administrative bypass" option.

As the name suggests, the "administrative bypass" option permits federal complainants seeking relief for age discrimination to proceed directly to federal court without exhausting their administrative remedies. *See* 29 U.S.C. § 633a(d).  The ADEA provides for the "administrative bypass" provision as follows:

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' ***notice of an intent to file*** such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.

*Id*. (emphasis added); *See also* 29 C.F.R. § 1614.201 (notice must be filed within 180 days of alleged unlawful act and at least 30 days before suit is filed).  Here, plaintiff filed one document with the EEOC charging TVA with age discrimination.  This document, attached as Exhibit A to the First Amended Complaint, (doc. 23-1), is titled "Charge of Discrimination," and the First Amended Complaint labels this document as a "charge," (doc.

10

23 ¶ 9(a)).  Plaintiff has not alleged that he gave the EEOC a "notice of an intent to file [suit]" ("notice of intent to sue").  Because an EEOC "charge" and a "notice of intent to sue" are separate and distinct administrative devices, *see infra*, at 12-18, plaintiff has not complied with the prerequisites of the "administrative bypass" option, and TVA and its Board of Directors are due to be dismissed as party defendants to this action.

While the court is aware of the harsh results of this decision, plaintiff's attempt to circumvent section 633a(d)'s "notice of intent to sue" requirement cannot be upheld.  To put plaintiff's argument into context, it is important to explain the ADEA administrative remedial process applicable to employees of private entities ("private employees").

29 U.S.C. § 626(d)(1) governs the administrative procedures applicable to private employees seeking ADEA relief.  Unlike federal employees, private employees must file "a ***charge*** of unlawful discrimination with the EEOC before filing suit," *Leach v. State Farm Mut. Auto. Ins. Co.*, 431 Fed. Appx. 771, 774-75 (11th Cir. 2011) (citing *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004); 29 U.S.C. § 626(d)(1)) (emphasis added), "[and] [t]o be timely, the charge must be filed within 180 days after the date of the allegedly unlawful act," *id.* at 775 (citing 29 U.S.C. § 626(d)(1)(A)).  "The employee must then wait at least 60 days before filing a civil action." *Bost*, 372 F.3d at 1238 (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 (11th Cir. 1996)); *See* 29 U.S.C. § 626(d)(1). If the EEOC dismisses the charge and issues a right-to-sue notification, 29 U.S.C. § 626(e) requires private employees to file suit within 90 days of receiving such notification.

Plaintiff exhausted his administrative remedies with respect to DZNPS, his private "joint employer." That is, he filed a charge of age discrimination against DZNPS with the EEOC on February 18, 2011, only five months after his September 2010 termination, and he filed suit within 90 days of receiving the EEOC's Dismissal and Notice of Rights letter. (Doc. 23 ¶¶ 9(a)-(c); *see* docs. 23-1, 23-2.) Plaintiff's charge also named TVA as a discriminating "joint employer." (*See* doc. 23-1.) As noted, the ADEA provides federal complainants with two alternative avenues for pursuing redress for age discrimination, neither of which provides that a federal employee may commence civil litigation against a federal employer after filing a timely EEOC ***charge***. Plaintiff, however, contends that a section 626(d) "charge" and a section 633a(d) "notice of intent to sue" are interchangeable terms. (Doc. 16 at 17 n.7.) Thus, plaintiff implicitly argues that he satisfied the prerequisites of the "administrative bypass" option because he filed a "charge," an allegedly adequate substitute for a "notice of intent to sue," within 180 days of his termination, and he filed suit more than 30 days after filing that "charge." *See* 29 U.S.C. § 633a(d).

The ADEA does not define the terms "charge" or "notice of intent to sue," but EEOC regulations set forth the contents which should be included in an ADEA "charge." The relevant regulations state, in pertinent part:

(a) In addition to the requirements of [29 C.F.R. § 1626.6],[4] each charge

---

[4]Section 1626.6 provides that "[a] charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." 29 C.F.R. § 1626.6.

*should* contain the following:

> (1) The full name, address and telephone number of the person making the charge;
>
> (2) The full name and address of the person against whom the charge is made;
>
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;
>
> (4) If known, the approximate number of employees of the prospective defendant employer or members of the prospective defendant labor organization.
>
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge either a written statement or information reduced to writing by the Commission that conforms to the requirements of § 1626.6.

29 C.F.R. §§ 1626.8(a), (b) (emphasis added; footnote added).  The Supreme Court has

defined a "charge" as a filing which "must be reasonably construed as a request for the

agency to take remedial action to protect the employee's rights or otherwise settle a dispute

between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389,

402 (2008).

EEOC regulations do not specify what information should be included in a "notice

of intent to sue."  However, Chapter 4 of the EEOC Management Directive 110 ("MD-

110"), effective as of November 9, 1999, provides that:

> b. The notice of intent to sue should be dated and ***must*** contain the following information:
>
>> (1) ***statement of intent to file a civil action*** under section 15(d) of the Age Discrimination in Employment Act of 1967, as amended[,] [29 U.S.C. § 633a(d)];
>>
>> (2) name, address, and telephone number of the employee or applicant;
>>
>> (3) name, address, and telephone number of the complainant's designated representative, if any;
>>
>> (4) name and location of the federal agency or installation where the alleged discriminatory action occurred;
>>
>> (5) date on which the alleged discriminatory action occurred;
>>
>> (6) statement of the nature of the alleged discriminatory action(s); and
>>
>> (7) signature of the complainant or the complainant's representative.

MD-110, Chap. 4, § IV(D)(b) (Nov. 9, 1999), *available at* http:// www. eeoc. gov/ federal/ directives/ md110/ chapter4. html (emphasis added).

The court acknowledges that the underlying purposes of a "charge" and a "notice of intent to sue" are nearly identical. Upon receiving a "charge," the EEOC "shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d)(2). Similarly, upon receiving a "notice of intent to sue," the EEOC "shall promptly notify all persons named therein as

prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice." 29 U.S.C. § 633a(d).

While "charges" and "notices of intent to sue" serve the same underlying purposes, their dissimilarities demonstrate that they are separate and distinct administrative devices. Above all, a "charge" is a "***request for the agency to take remedial action*** to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402 (emphasis added). A "notice of intent to sue," however, does not request the EEOC to take any remedial action whatsoever. Rather, a "notice of intent to sue" alerts the EEOC that a federal complainant intends to bypass the administrative process altogether and file an age discrimination complaint directly in federal court. *See* 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a); MD-110, Chap. 4, § IV(D)(b). The court also finds relevant the fact that a "notice of intent to sue" ***must*** contain certain information, whereas a "charge" need not contain any particular piece of information. *See* MD-110, Chap. 4, § IV(D)(b); 29 C.F.R. §§ 1626.8(a), (b); *Holowecki*, 552 U.S. at 402. Moreover, the EEOC requires "charges" and "notices of intent to sue" be filed at different locations. A "notice of intent to sue" "must be filed in writing with [the] EEOC, at P.O. Box 77960, Washington, DC 20013, or by personal delivery or facsimile . . . ." 29 C.F.R. § 1614.201(a). A "charge" "may be submitted in person, by telephone, or by mail to any office of the Commission or to any designated representative of the Commission." 29 C.F.R. § 1626.5. Based on these differences, the court is of the opinion that a section 626(d) "charge" and a

section 633a(d) "notice of intent to sue" are not interchangeable administrative devices.

The court's conclusion is bolstered by the fact that Congress has drawn a clear distinction between the terms "charge" and "notice of intent to sue." When the ADEA was enacted in 1967, the former section 626(d) read: "No civil action may be commenced by any individual under this section until the individual has given the Secretary [of Labor] not less than sixty days' ***notice of an intent to file such action***."[5] ADEA, Pub. L. No. 90–202, 81 Stat. 602, 605 (1967) (emphasis added). On April 6, 1978, Congress amended section 626(d) to read as follows: "No civil action may be commenced by an individual under this section until 60 days after a ***charge*** alleging unlawful discrimination has been filed with the Secretary." *See* ADEA Amendments of 1978, Pub. L. No. 95-256, 92 Stat. 189 (1978) (emphasis added). As noted by the Middle District of North Carolina:

> Prior to the 1978 amendments to the ADEA, Pub. L. 95-256, section 626(d) required a complainant to file a "notice of intent to sue" rather than a "charge" of age discrimination. This change was meant to expand complainants' rights under the ADEA and make more flexible the notice requirement of section 626(d) so as to avoid having complainants' efforts frustrated by failing to identify or mention an "intent to sue." *Pirone v. Home Insurance Co.*, 507 F. Supp. 1281 (S.D.N.Y. 1981); *Scaramuzzo v. Glenmore Distilleries, Co.*, 501 F. Supp. 727 (N.D. Ill. 1980).

*Frasco v. Joseph Schlitz Brewing Co.*, 532 F. Supp. 1020, 1022 (M.D.N.C. 1982). Congress also amended section 633a in the 1978 amendments. However, Congress "retained [section

---

[5]"Pursuant to Reorganization Plan No. 1 of 1978, responsibility and authority for enforcement of the [ADEA] was transferred from the Department of Labor to the [EEOC]. The transfer became effective and the Commission assumed enforcement of the Act on July 1, 1979." 48 Fed. Reg. 26434, 26434 (June 7, 1983).

633a(d)'s] 'notice of an intent to file' language while [section] 626 was modified to require the filing of a 'charge.'" Kristine Cordier Karnezis, Annotation, *Sufficiency of Contents of Notice to Equal Employment Opportunity Commission Charging Violation of Age Discrimination in Employment Act*, 27 A.L.R. Fed. 2d 367 n.8 (2008); *See* ADEA Amendments of 1978, Pub. L. No. 95-256, 92 Stat. 189.  Clearly, Congress's choice to substitute the "notice of intent to sue" language with "charge" in the private-sector context, yet retain the "notice of intent to sue" requirement in the federal-sector context lends support to the court's conclusion that a "charge" and "notice of intent to sue" are not interchangeable terms.[6]

Congress also added 29 U.S.C. § 633a(f) in the 1978 amendments to the ADEA which, "literally read, mandates a complete divorce between the [private and federal compliance] schemes." *Kennedy v. Whitehurst*, 690 F.2d 951, 956 (D.C. Cir. 1982); *See*

_____

[6]At oral argument, plaintiff's counsel directed the court to the United States Supreme Court decision of *Lorillard v. Pons*, 434 U.S. 575 (1978) in support of the proposition that a "charge" and "notice of intent to sue" are interchangeable administrative devices.  The *Lorillard* decision, decided on February 22, 1978, examined whether the ADEA provided private litigants with a right to a jury trial in actions seeking recovery of lost wages. 434 U.S. at 576.  In doing so, the court briefly noted that, at that time, section 626(d) required private ADEA complainants to "give notice to the Secretary of Labor of [their] intention to sue in order that the Secretary can attempt to eliminate the alleged unlawful practice through informal methods." *Id*. at 580.  Nowhere in the opinion does the Supreme Court mention the term "charge," much less suggest that a "charge" is an adequate substitute for a "notice of intent to sue."  The absence of the term "charge" is not surprising considering that the *Lorillard* decision was issued **before** the April 6, 1978 amendments to the ADEA.  Thus, the court finds that the *Lorillard* decision does not support plaintiff's position.

ADEA Amendments of 1978, Pub. L. No. 95-256, 92 Stat. 189.  Section 633a(f) states that any ADEA claim brought by a federal employee is neither affected by nor subject to "any provision of [the ADEA], other than the provisions [relating to age discrimination in compensation and age requirements] and the provisions of this section [633a]." Section 633a is a self-contained statute, and by enacting it, "Congress deliberately prescribed a *distinct statutory scheme applicable only to the federal sector* . . . ." *Lehman*, 453 U.S. at 166.  However, construing "charges" and "notices of intent to sue" as interchangeable administrative devices creates an inherent overlap between the "administrative bypass" option of section 633a(d) and the private-sector remedial scheme of section 626(d), an overlap which section 633a(f) plainly seeks to avoid.

Finally, the fact that plaintiff sues a private corporation and a federal agency as "joint employers" does not alter the outcome. (*See* doc. 23 ¶ 14.)  The EEOC has issued guidelines addressing the appropriate administrative procedure for when "a staffing firm sends its employee on a job assignment with a federal agency and the individual is subjected to discrimination while on the assignment . . . ." EEOC Notice No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms (Dec. 3, 1997), *available at* http:// www. eeoc. gov/ policy/ docs/ conting. html.  "Staffing firms" are defined as "temporary employment agencies, contract firms, and other firms that hire workers and place them in

job assignments with the firms' clients." *Id*.  The EEOC Notice states:

> If the staffing firm worker seeks to pursue a complaint against the federal agency as his or her employer, (s)he should contact an [EO] Counselor at the federal agency within 45 days of the date of the alleged discrimination.  If the individual also seeks to pursue a claim against the staffing firm, (s)he should file a separate charge with an EEOC field office.

*Id*.  Thus, the EEOC contemplates a bifurcated administrative remedial process when a complainant pursues relief against a private employer and a federal employer for the same discriminatory act.  That is, a complainant alleging discrimination should separately exhaust his federal-sector and private-sector administrative remedies when suing a federal agency and private entity as "joint employers." *Id*.; *See also Frank v. England*, 313 F. Supp. 2d 532, 537 (D. Md. 2004) ("[T]he Court notes that it would be unreasonable to consider the Navy a second employer under Title VII, but exempt Plaintiff from exhausting his administrative remedies as to the Navy.").  While the EEOC Notice does not take into account the "administrative bypass" option available to federal ADEA complainants, it is nonetheless instructive insofar as it shows that suing a private entity and a federal agency as "joint employers" does not exempt a complainant from complying with the express prerequisites to suit applicable to federal employees.

## IV.   CONCLUSION

For the foregoing reasons, TVA's Motion to Dismiss, (doc. 13), is due to be granted. As a result, TVA and the individual members of its Board of Directors are due to be dismissed as party defendants.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 30th day of March, 2012.

*Sharon Lovelace Blackburn*
_____
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

20